We'll hear argument now in the case of United States v. Hampton. Mr. Brown. Good morning. May it please the Court, I'm Jerry Brown, and I represent the appellant Alonzo Hampton in this matter. The district court in this matter erred in denying Mr. Hampton's request for a Franks hearing for the following reasons. First, they erred in finding that the omissions from the affidavits submitted in order to get the search warrant. Mr. Brown, can I ask you a question? I'm always interested in these cases. What would you have asked during a Franks hearing? You put the witness on the stand, and other than conducting discovery, what would you have asked him that would have materially changed whether there was probable cause to conduct the search? I would have probably directed my question to the second controlled buy. Where there's this discrepancy in weight? Yes. So even if, which is a little weird, right? I mean, sometimes that happens in drug transactions, but you don't see often that large of a discrepancy. Maybe with an $80 transaction you do, but he was clearly shorted. The drugs were short of what he had paid for in the first and the third. But even if you were right, what difference would that have made to the probable cause determination? Because they still had the first and the third controlled buy. Well, that goes right to the heart of the argument we're making. And just to be clear, we're not contesting whether that discrepancy had been revealed or disclosed to the magistrate issuing the warrant. We recognize the record's clear that that discrepancy was before the court. What we question is that the lack of additional information and the possibility that since there were third parties there whose presence was unexplained, the possibility that they may have had some involvement in the drug transaction, that was not disclosed to the magistrate. Well, it was disclosed that there were third parties there. But again, even if that was true, that there were others that were involved in the drug transaction, how does that affect the probable cause determination? Why wouldn't the magistrate judge have said, so what? Because at the core is the credibility of the CS. And the district court, while it did deny the request for the Franks hearing, it did state, and I'm quoting it, the omitted information that on January 6, 2020, the CS and Hampton went to a second location and met two women, might have called into question the probable cause for that transaction if it was only information in the affidavit. I'm with you there on the credibility of the CI or the CS. But the problem is it's not, there's no jury. It's not proof beyond a reasonable doubt. It's just probable cause. Is it more likely than not? And sometimes CSs don't tell the whole truth, but that doesn't affect the probable cause determination. But the credibility of the CS, recognizing they often have challenged backgrounds in terms of credibility, the magistrate still is relying to some degree on the credibility of the CS. And once that credibility is realistically called into question, as the district court acknowledges it very well was, the argument we're making is can you then cure that challenge to the CS's credibility by then pointing to the other controlled buys and saying, well, you don't have the same circumstances there, so we can presume the credibility of the CS and just accept the first and third buys as a valid basis. Mr. Brown, can I ask you what I think is the same question but with a slightly different angle on it? Sure. Okay. And that is I think you're right to point out these discrepancies. It's the best argument you got. But what the discrepancies do not bear upon, at least as I see it, is whether there was probable cause to believe that the two houses contained narcotics. In other words, there's no impeachment, no calling into question the CS's credibility with respect to whether when the CS entered the two homes they were empty handed, the CS was empty handed. And we know the CS came out of both homes with heroin, right? And so the presumption by the issuing judge had to have been the locations contained heroin. Because the CS went in without heroin, went in with money, came out with heroin and no money. And so I hear you that, well, hold on, 80 bucks should have got double the amount of heroin. And there's these two other people that are kind of unaccounted for in the house. But how does it bear upon whether it's probable cause to believe the homes contained heroin? It also allows the inference that either the homes had heroin or individuals who went to the homes had heroin. And again, since we have the- We're focused on that second transaction, right? Yes. So even if the theory was what the CS used half the heroin or threw it out the window and was going to come after it later or something, I don't know what happened. I mean, I don't even know. I have no idea how much heroin the CS got. But I don't think there's any doubt there was heroin in the house. As you note in our brief, we are relying on the U.S. versus Lowell case, a case in which going beyond the facts of what we have here, it was conclusively demonstrated that the CS had, in fact, pocketed money from the transaction. And that so severely undermined the CS's credibility that it was a basis for throwing out the affidavit. While we do not have proof that rises to that level, again, we are focused on how this reflects adversely on the credibility of the CS. And since we have third parties present at the other two buys, if the second buy had simply not happened, I think the case law makes it pretty clear that there just wouldn't be much of an issue here at all. And again, so the question I'm presenting to the court is, if the district court itself recognizes the credibility challenge presented by the second buy, is it free to simply disregard the challenge to credibility on that issue by simply invoking the first and third buys? The CS's credibility is critical to all the information submitted to the magistrate. And we would recognize that if the first and third buys had been done with a CS, we wouldn't be here because the credibility of the CS for the second would have no bearing on the credibility for the first and third. So our focus, again, is the credibility of the CS. In fact, the district court does acknowledge that it reflects negatively on its credibility by its language. So then our challenge is, is it proper to then compartmentalize that second buy with regard to the credibility issue and say, well, that has no bearing on the first and third transactions. There's no contention, is there, that Officer McGill knowingly or intentionally left anything out of the affidavit? No. Right, which is a big distinction from the Fourth Circuit's decision in Lull. In Lull, the affiant knew that the CS had lied and then omitted it from the search warrant affidavit. I guess we are relying, however, on, I believe, Puller versus Baca and Miller on the issue of, if the officer knew that the information being omitted is of the nature that the magistrate would want to hear or potentially vitiate probable cause, that can be a basis for drawing the conclusion as to intent to deceive the magistrate for purposes of getting the search warrant. Unless there are, I've pretty much covered the text of my argument. So unless there are further questions, I'm going to preserve the rest of the remainder of my time. Not at the moment. Thank you, Mr. Brown. Mr. Simpson. Good morning, Your Honors. May it please the Court, I'm Scott Simpson on behalf of the United States. This Court has said that Frank's hearings are rarely granted or rarely required, and this certainly is not such a case. The defense we submit cannot show the substantial showing that there were material inaccuracies or that the officer was reckless or deliberately tried to mislead the state judge. As I believe some members of the panel have already observed, the showing of probable cause here was pretty overwhelming. There were three control buys, plus the confidential source gave a ride to Mr. Hampton at one point during this period to secure more drugs to sell. And the defense's arguments relate only to two of those control buys. Go ahead and start, if I could, with the first buy, control buy, which is discussed in the briefing, even though defense counsel has focused on the second buy. On the first control buy, the officer, as we see in the brief, merely left out the fact that Mr. Hampton and the source stopped by another house after the purchase before Mr. Hampton met with law enforcement. But there's no dispute that the source contacted Mr. Hampton about buying heroin, that Hampton had the source come to his address for that purpose, and that Hampton got into the source's car for that purpose. The fact that they stopped somewhere else for four minutes after that point is just an irrelevant side note. The affidavit obviously doesn't need to include every single detail. Now, Mr. Hampton's assertions on the second control buy, personally, we think are even weaker, if that's possible. The officer swore to the fact that he had uploaded the video of the control buy to evidence.com, and there's no reason to doubt that. And on the difference between the purchase amounts, that's not at all uncommon, as I believe Judge Kirsch has mentioned. The officer searched the source after the purchase and didn't find any heroin or any leftover government funds. On this Fourth Circuit decision, this Lowell decision that the defense relies on, in that case, as in this case, there was a search of the source after the control buy, and unlike in this case, law enforcement found leftover government funds on the person of the source. So that greatly distinguishes Lowell from this case. Again, the showing of probable cause was pretty overwhelming here, and even if we put back in these side issues, these other details that were left out of the affidavit, there's still ample evidence to support probable cause to search both the Third Street residents and the Peoria House residents. So if there are no questions from the panel, we will ask the court to affirm. Thank you, Mr. Simpson. Anything further, Mr. Brown? Well, Mr. Brown, we appreciate your willingness to accept the appointment in this case. Thank you, sir. The case is taken under advisement.